UNITED STATES v. PRESIDENT, ETC., OF JAMAICA & R. TURNPIKE ROAD et al.

(Circuit Court, E. D. New York. September 16, 1910.)

1. NAVIGABLE WATERS (§ 2*)—WATERS SUBJECT TO JURISDICTION OF UNITED STATES—REMOVAL OF OBSTRUCTIONS.

The constitutional jurisdiction of the United States to legislate over navigable waters applies to the entire body of water where the tide ebbs and flows, over which water, or through the channels of which, interstate or foreign commerce might ordinarily or reasonably be transacted, or

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

which is subject to the admiralty jurisdiction; and the power of the War Department over obstructions to such waters, conferred by Act March 3, 1899, c. 425, 30 Stat. 1151 (U. S. Comp. St. 1901, p. 3540), is coextensive with such general jurisdiction.

[Ed. Note—For other cases, see Navigable Waters, Cent Dig. §§ 2, 63; Dec. Dig. § 2.*

Obstruction—jurisdiction of federal courts, see note to 11 C. C. A. 318.]

2. NAVIGABLE WATERS (§ 1*)—"NAVIGABLE WATER" OF UNITED STATES DE-FINED.

A stream running into the sea, and in which the tide ebbs and flows, is "navigable water," and subject to the jurisdiction of the United States as far up as it is actually navigable for the purposes of interstate and foreign commerce.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 5–16; Dec. Dig. § 1.*

For other definitions, see Words and Phrases, vol. 5, p. 4684.]

3. CANALS (§ 23*)—WATERS SUBJECT TO JURISDICTION OF UNITED STATES.

A canal built and operated by private persons for commercial purposes, or used for the passage of boats, for which a fee is charged, is subject to the admiralty jurisdiction of the United States so long as its navigable character is maintained, and, under the statute, cannot be obstructed except by consent of the United States.

[Ed. Note.—For other cases, see Canals, Dec. Dig. § 23.*]

4. NAVIGABLE WATERS (§ 20*)—OBSTRUCTION BY BRIDGE—SUIT FOR INJUNCTION.

Where a private canal constructed and used as a cut-off to take the place commercially of the tortuous channel of a navigable stream has been abandoned, and its uses for such purpose entirely destroyed by the owner of the rights therein, the rights of the public revert to the original channel of the stream, and under Act March 3, 1899, c. 425, 30 Stat. 1151 (U. S. Comp. St. 1901, p. 3540), the United States may maintain a suit to enjoin the obstruction of such channel by a bridge.

[Ed. Note.—For other cases, see Navigable Waters, Dec. Dig. § 20.*]

In Equity. Suit by the United States against the President, Directors, and Company of the Jamaica & Rockaway Turnpike Road, the Long Island Electric Railway Company, the Long Island Railroad Company, and Charles A. Porter. Decree for complainant.

William J. Youngs, U. S. Atty. (Louis R. Bick, Asst. U. S. Atty., of counsel).

William E. Stewart (Arthur G. Peacock, of counsel), for defendant the President, Directors and Company of the Jamaica & Rockaway Turnpike Road.

James L. Quackenbush (Ralph Norton, of counsel), for defendant Long Island Electric Ry. Co.

Joseph F. Keany, for defendant Long Island R. Co.

CHATFIELD, District Judge. The present case arises from an application on the part of the United States, under chapter 907 of the Laws of 1890 (26 Stat. 453), as amended by chapter 158 of the Laws of 1892 (27 Stat. 88) and chapter 425 of the Laws of 1899 (30 Stat. 1151) and chapter 23 of the Laws of 1900 (31 Stat. 31), to compel the removal of a bridge used exclusively by the Long Island Electric Rail-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

way Company for the maintenance of a trolley track over a stream known as "Hook Creek" in the county of Queens, in this district.

Prior to 1859, Hook creek was a winding tide-water stream, up and down which pleasure boats, small scows carrying fertilizer and coal and fishing craft of various sizes were wont to pass, from Jamaica Bay to the farms or landings a short distance up the creek. In the year 1806 a turnpike company was incorporated under the laws of the state of New York to operate a turnpike or toll road over the spot in question, and the validity of its franchises for the building and maintenance of the turnpike are not disputed. A corporation was also formed, known as the Foster's Meadow Canal & Dock Company, in the year 1859, to construct and navigate a line of canal and water communication from the mouth of Hook creek to the farm of Stephen Carman. This company constructed a canal, of which portions of the old creek formed a part; and the present bridge crosses a short straight section at the upper end of this canal. Thus some mile and a half of winding channel around the turns of the old creek was reduced to a straight channel of less than one-half mile. This canal was partially closed by one John Hirst, who purchased the rights of the canal company on foreclosure in 1871. One Charles Hirst is the heir at law of John Hirst, who died prior to the commencement of this action. The filling in by Mr. Hirst, which was completed by the turnpike company in subsequent years, consisted of building a solid bank under the turnpike bridge at that point, while above and below this bridge the depth of water in the canal was not interfered with. This condition continued until the year 1898, when the Long Island Electric Railway Company, which under a contract or lease of the turnpike road operated tracks over the turnpike in question, partially removed the filling, and constructed a trestle or bridge, upon which its cars have since been running. The turnpike company is interested in this action because it is the lessor of the highway of which the bridge forms a part, and is under agreement with the Long Island Electric Railway Company for the use of this highway. The Long Island Electric Railway Company is interested in the action because of its use of the tracks and the effect of any interruption in the passage of its trolley cars. The defendant the Long Island Railroad Company has no direct interest in the situation. The defendant Charles A. Porter died before the action was brought to trial, and neither his estate nor his heirs and representatives appear to be affected by the results of the action.

The defendants who have answered or offered testimony have shown their right to use the structures so far as their relations with each other and with the state are concerned. They contend that the United States has no jurisdiction over the canal both on the ground that it is said not to be navigable water of the United States, and also because they contend that a private canal connected with navigable water may be closed by the owners and operators without respect to the laws of navigation of the United States, and that this canal was so closed by Mr. Hirst after a considerable period of substantially small use by the public.

The question of jurisdiction over such waters as Hook creek, in which the tide ebbs and flows, and which at the point in question would be plainly navigable to such an extent as to be capable of some degree of foreign or interstate commerce as well as the passage of pleasure boats, need not be considered at length. The same question has been disposed of, so far as this district is concerned, and discussed at some length in the case of the Bannister Realty Co. (C. C.) 155 Fed. 583. That case and various decisions therein cited establish the proposition that the jurisdiction of the United States under the Constitution applies to the entire body of water where the tide ebbs and flows, over which water or through the channels of which interstate commerce or foreign commerce might ordinarily or reasonably be transacted, or which is subject to the admiralty jurisdiction of the United States. Under the statute in question, the jurisdiction of the War Department over obstructions to such waters is coextensive with the jurisdiction of the government in such localities.

The defendants in the present case contend, further, that because Hook creek is not a means of communication with any other body of water it comes within the doctrine of the Leovy Case (177 U. S. 621, 20 Sup. Ct. 797, 44 L. Ed. 914), and that no body of water, actually navigable, can be considered legally navigable for the purposes mentioned and under United States jurisdiction if it merely forms the end of a route of transportation or access. The Leovy Case uses the language which is relied upon by these defendants with respect to the last stretch of a small stream in a roundabout passage from the sea, where the purposes of commerce could never be fulfilled by pursuing the devious course necessary to reach the point in question. But there is nothing in the Leovy Case to indicate that the term "navigable waters" was limited to a body of water that connected with some other body of water, rather than with a wharf or place of transfer to other methods of transportation. It would therefore seem to follow that Hook creek was a navigable stream, and much of the old channel of the stream, even in its present condition, is shown by the testimony to be navigable water of the United States.

The particular difficulty shown in this case viz., the gcat interference with trolley lines and other constant means of communication between thickly populated points, which would be occasioned by the operation of a drawbridge for unimportant or trivial uses, has been recognized, and the necessity for suits like the present largely done away with by the act of Congress of June 25, 1910, c. 436, 36 Stat. 866. This statute makes it possible for the defendants even now to apply to the United States for authority to retain the structure complained of; but it does not relieve the court of the necessity of a decision upon the issues as they are presented. But the very fact that discretion is now vested in the War Department for approving such necessary obstructions indicates that, in the absence of such legislation, the water must be considered navigable waters of the United States, and that it would be the duty of the War Department and the other branches of the government to prevent the obstruction of these waters in any way. The carrying of coal, which, to the court's knowledge, must be brought from without the state of New York, shows

the existence and possibility of interstate commerce, and further establishes the jurisdiction of the United States.

A more serious question arises when we come to consider the particular bridge as to which this action is brought. As has been said, the old channel of the creek has not been much used since the canal was built, for passage up and down. Since the canal was filled in and the bridge over which the trolley operated built, a great part of the water has flowed through the canal, and it has been impossible to pass up and down either the canal or the old stream, except at low tide, with anything larger than a rowboat. At high tide, even a rowboat cannot go under the turnpike bridge over which the trolley road runs.

The defendants are shown by the record to have been ordered to construct a draw, and upon their failure so to do the present application has been brought, in which the relief asked is a removal of the solid bridge over the canal and the restoration of a navigable channel at this place. We must therefore consider when a private canal or a canal built and operated by private individuals and used for the passage of boats for which a fee is charged is subject to the jurisdiction of the United States, under the statutes above referred to.

In the case of Malony v. City of Milwaukee (D. C.) 1 Fed. 611, it was held that the Erie Canal, in the state of New York, was navigable water of the United States; and the cases therein cited show that the canal, if built by private individuals, for commercial purposes, and offered or allowed to be used by the public for such use as would be considered within the commerce clause of the Constitution, becomes subject to the admiralty jurisdiction of the United States, so long as its navigable character is maintained. It necessarily follows that obstructions to the navigable character of these artificial channels cannot be created except as it is done with the consent of the United States government, or unless the private waterway be entirely discontinued, so that the purposes and rights of the franchises to operate that waterway are given up. So long as the franchise is in existence, or as the canal is maintained as a canal, the public has a right to have its navigability preserved so that the public use shall not be interfered with.

Even if the present bridge over the canal be allowed to remain, upon the theory that the canal itself has been abandoned and its uses entirely destroyed by the owner of the rights to the canal, then the navigable character of Hook creek would immediately compel the construction of a drawbridge over the creek by the turnpike company and the trolley road, for the original uses of the creek would revert to the old channel, and the canal would cease to exist. The diversion of water and interference with the navigation of the old channel would have to be terminated. On the other hand, so long as the canal is maintained as a body of water upon which boats are to any extent allowed to pass up and down, and is thus proffered to the public as a substitute for the roundabout course through the older channel, then just so long will the navigable character of that canal and the rights of the public under the statutes referred to attach to the canal; and any obstruction, whether by the owner or by the turnpike company or by the trolley

road, which prevents the passage of boats up one channel or the other, is a violation of the statute and must be removed. Any possibility of continued or regular navigation from the ocean confers jurisdiction upon the federal government, and the laws of Congress then apply thereto. The question of whether the War Department, under the new statute, will consider it proper to allow the channel to be closed is something with which we have nothing to do. Assuming that the channels are navigable, the government is entitled to a decree, ordering the removal of the obstruction, and a restoration of the unobstructed channel. In the present action the government may have a decree, directing the defendants to remove the obstructions.